1  **RIVERA HEWITT PAUL LLP**
   11341 Gold Express Drive, Ste. 160
2  Gold River, California 95670
   Tel: 916-922-1200
3  Fax: 916-922-1303

4  SHANAN L. HEWITT (SBN 200168)
   shewitt@rhplawyers.com
5

6  Attorneys for Defendants,
   TOWN OF LOS GATOS
7  AND OFFICER REYES

8

9              **UNITED STATES DISTRICT COURT**

10           **NORTHERN DISTRICT OF CALIFORNIA**

11

12 DANIELE REIMANN                          Case No. 5:23-cv-04134-NC

13              Plaintiff,                  **DEFENDANTS TOWN OF LOS
                                            GATOS AND OFFICER REYES'**
14     vs.                                  **NOTICE OF MOTION AND MOTION
                                            FOR SUMMARY JUDGMENT, OR IN**
15                                          **THE ALTERNATIVE, PARTIAL
                                            SUMMARY JUDGMENT;**
16                                          **MEMORANDUM OF POINTS AND
   TOWN OF LOS GATOS, JONATHAN              AUTHORITIES IN SUPPORT THEREOF**
17 REYES, and DOE 1 to 10, INCLUSIVE,

18              Defendants.                 Hearing Date: September 18, 2024
                                            Time:  11:00 a.m.
19                                          Courtroom:  5, 4th Floor
                                            Judge:  Hon. Nathanael Cousins
20

21

22

23

24

25

26

27

28

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC                                    i

# <u>TABLE OF CONTENTS</u>

NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT OR IN THE
ALTERNATIVE, PARTIAL SUMMARY JUDGMENT ...................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................1

   I.  INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED......................... 1-2

   II.  STATEMENT OF FACTS ....................................................................... 2-9

       A. Plaintiff's Allegations ................................................. 2-3

       B. Statement of Undisputed Facts ................................... 3-9

   III.  LEGAL STANDARD.......................................................................... 9-10

   IV.  ARGUMENT.................................................................................... 10-25

       A. The Video Evidence Establishes That Defendants
       Are Entitled to Summary Judgment................................. 10-11

       B. Plaintiff's Fourth Amendment and False Arrest/Imprisonment Claims
       Fail as the Undisputed Evidence Demonstrates that the Officers' Actions
       were Reasonable and Probable Cause Existed To Take Her Into Custody ........ 11-15

       C. Plaintiff Has Failed to Establish a *Monell* Claim Against
       the Town of Los Gatos........................................................ 15-17

       D. The Undisputed Material Facts Establish No Excessive Force,
       No Assault or Battery......................................................... 17-20

       E.  The Undisputed Material Facts Establish That No Bane Act
       Violation Occurred............................................................. 20-21

       F.  The Intentional Infliction of Emotional Distress Claim Fails as LGMS PD
       Officers Engaged in No Outrageous Conduct .........................................22

       G. Alternatively, LGMS PD Officer Reyes Is Entitled
       to Qualified Immunity........................................................ 22-25

   V.  CONCLUSION...................................................................................25

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

ii

# TABLE OF AUTHORITIES

**Cases:**

Anderson v. Creighton, 483 U.S. 635 (1987) ...........................................................23, 25

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).......................................... 9-10

Ashcroft v. al-Kidd, 563 U.S. 731 (2011)................................................................23

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) .........................................11, 14

Blankenhorn v. City of Orange, 485 F.3d 463 (9th Cir.2007)...............................17

Board of Comm'rs of Bryan County v. Brown, 520, U.S. 397 (1997)..............15, 16

Brooks v. United States, 29 F. Supp. 2d 613 (N.D. Cal.1998) .............................18

Brown v. Ransweiler, 171 Cal. App. 4th 516 (2009) ............................................18

Bull v. City & County of San Francisco, 595 F.3d 964 (9th Cir. 2010).......... 15-16

Cameron v. Craig, 713 F.3d 1012 (9th Cir. 2013)................................................20

Chaudhry v. City of L.A., 751 F.3d 1096 (9th Cir. 2014) .....................................20

City of Canton, Ohio v. Harris, 489 U.S. 378 (1989) ..........................................16

City of Los Angeles v. Heller, 475 U.S. 796 (1986) ..............................................16

City of Oklahoma v. Tuttle, 471 U.S. 808 (1985) ...........................................15, 17

Celotex Corp. v. Catrett, 477 U.S. 317 (1986) ...................................................9, 11

Connick v. Thompson, 131 S. Ct. 1350 (2011) .....................................................16

Cornell v. City & County of San Francisco, 17 Cal. App. 5th 766 (2017)........ 20-21

District of Columbia v. Wesby, 138 S. Ct. 577 (2018)...................................11, 14

Echevarria v. City of Santa Monica,
2022 WL 2903123, at *9 (C.D. Cal. May 26, 2022) ......................................20, 24

Edson v. City of Anaheim, 63 Cal. App. 4th 1269 (1998) .....................................18

Graham v. Connor, 490 U.S. 386 (1989)..............................................................17

Harlow v. Fitzgerald, 457 U.S. 800 (1982)..........................................................23

Hughes v. Pair, 46 Cal.4th 1035 (2009)...............................................................22

Hughes v. Rodriguez, 31 F.4th 1211 (9th Cir. 2022) ...........................................10

Hupp v. City of Walnut Creek, 389 F.Supp.2d 1229 (N.D. Cal. 2005)...........19, 24

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

iii

Lowry v. Standard Oil Co., 63 Cal. App. 2d 1, 6-7 (1944) ..................................................... 17-18

Maggay v. Micke, No. 21-CV-04994 BLF (PR),
2023 WL 7284147, at *10–11 (N.D. Cal. Nov. 2, 2023)................................................................10

Malley v. Briggs, 475 U.S. 335 (1986)..........................................................................................23

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, n.11 (1986)....................9, 10, 11

Monell v. Department of Social Servs., 436 U.S. 658 (1978) ................................................2, 15, 16

Mullenix v. Luna, 136 S. Ct. 305 (2015) ..................................................................................23, 25

O'Doan v. Sanford, 991 F.3d 1027 (9th Cir. 2021) ...................................................................11, 14

Oviatt by and through Waugh v. Pearce, 954 F.2d 1470 (9th Cir. 1992) .......................................15

Reese v. County of Sacramento, 888 F.3d 1030 (2018) ...........................................................20, 21

Saman v. Robbins, 173 F.3d 1150 n. 6 (9th Cir.1999) ...................................................................18

Saucier v. Katz, 533 U.S. 194 (2001) ............................................................................................22

Scott v. Harris, 550 U.S. 372 (2007)..................................................................................10, 11, 22

Smith v. County of Orange, 678 F.Supp.3d 1182 (C.D. Cal. 2023)...........................................19, 24

Smith v. Packham, 2023 WL 9291578 (9th Cir. Dec. 6, 2023)......................................................19

Stevenson v. Jones, 254 F. Supp. 3d 1080 (N.D. Cal. 2017)....................................................20, 24

Thompson v. City of Los Angeles, 885 F.2d 1439, 1444 (9th Cir. 1989) .................................15, 17

Torres v. City of Los Angeles, 548 F.3d 1197 (9th Cir. 2008)........................................................11

T. W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n,
809 F.2d 626 (9th Cir. 1987) .......................................................................................................10

United States v. Lopez, 482 F.3d 1067 (9th Cir. 2007)..................................................................11

United States v. Potter, 895 F.2d 1231 (9th Cir.) ..........................................................................14

United States v. Reese, 2 F.3d 870 (9th Cir. 1993) .......................................................................21

United States v Smith, 790 F.2d 789 (9th Cir. 1986) ....................................................................14

White v. Pauly, 137 S. Ct. 548 (2017) ......................................................................................23, 25

Williamson v. City of National City, 23 F.4th 1146 (9th Cir. 2022).........................................19, 24

Yaroshinsky v. City of Los Angeles,
2021 WL 4312567, at *8 (C.D. Cal. June 7, 2021) ...................................................................19, 24

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

iv

**U.S. Constitution**

Fourth Amendment ................................................................................................ *passim*

**Statutes**

42 U.S.C. § 1983 ................................................................................................... *passim*

California Civil Code § 52.1 ..............................................................................1, 20

California Civil Code section 52.1(b) ........................................................................20

California Penal Code §647(f) ............................................................................ *passim*

California Vehicle Code § 22651(b) ...........................................................................3

**Rules**

Federal Rule of Civil Procedure Rule 56 ............................................................ *passim*

**California Jury Instructions**

Judicial Council of California Civil Jury Instructions CACI 1300...................................18

Judicial Council of California Civil Jury Instructions CACI 1301...................................18

Judicial Council of California Civil Jury Instructions CACI 1402............................11, 14

Judicial Council of California Civil Jury Instructions CACI 1600...................................22

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

v

1  **NOTICE OF MOTION AND MOTION FOR SUMMARY JUDMGENT, OR IN THE**
2  **ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**

3  PLEASE TAKE NOTICE THAT on September 18, 2024 at 11:00 a.m., or as soon thereafter

4  as the matter may be heard in the above-entitled court, located at located at 280 South 1st Street in

5  San Jose, California, Defendants TOWN OF LOS GATOS and OFFICER JONATHAN REYES will

6  and hereby do move this Court for summary judgment, or alternatively, partial summary judgment

7  under Federal Rule of Civil Procedure ("FRCP") 56.

8  This motion is based on the Notice of Motion and Motion; Memorandum of Points and

9  Authorities; declaration of Shanan L. Hewitt and exhibits; declaration of Yolanda Lira and exhibits;

10  declarations' of Officer Jonathan Reyes and Cpl. Mario Carrizosa; all pleadings and papers on file in

11  this action; and upon such other matters as may be presented to the Court at the time of the hearing.

12  **MEMORANDUM OF POINTS AND AUTHORITIES**

13  **I.   INTRODUCTION & STATEMENT OF ISSUES TO BE DECIDED**

14  Plaintiff Daniele Reimann brought this lawsuit against Defendants Town of Los Gatos and

15  Los Gatos Monte Sereno Police Department ("LGMS PD") Officer Jonathan Reyes arising from her

16  encounter with LGMS PD officers on August 20, 2022 when she was taken into custody for public

17  intoxication, a violation of California Penal Code section 647(f). (Declaration of Shanan L. Hewitt

18  filed herewith ("Hewitt Decl."), Exh. 1: Amended Complaint at ¶ 3.)  In her amended complaint

19  (Doc. 39), Plaintiff asserts claims under federal and state law: (1) Fourth Amendment unreasonable

20  seizure; (2) Fourth Amendment excessive force; (3) 42 USC section 1983 failure to train; (4) Tom

21  Bane Act (Cal. Civil Code § 52.1); (5) false arrest/imprisonment; (6) battery; (7) assault; and (8)

22  intentional infliction of emotional distress. (See Hewitt Decl., Exh. 1.)

23  This motion presents the following issues:

24  A.  Whether Defendants are entitled to summary judgment under FRCP 56 based on the
25      undisputed material facts supported by video evidence documenting the incident at issue.

26  B.  Whether Defendants are entitled to summary judgment on Plaintiff's Fourth Amendment
27      and false arrest/imprisonment claims based on the reasonableness of the LGMS PD
28      officers' actions and probable cause that existed to take Plaintiff into custody.

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

1

C.  Whether Plaintiff's Section 1983 failure to train claim fails under *Monell v. Department of Social Servs.*, 436 U.S. 658 (1978), without evidence of any customs, policies or practices that caused a violation of Plaintiff's constitutional rights.

D.  Whether the undisputed materials facts establish that no excessive force, assault or battery occurred based on the evidence, including videos documenting the incident at issue.

E.  Whether the undisputed materials facts establish that no Bane Act violation occurred.

F.  Whether the undisputed materials facts establish that there was no outrageous conduct by LGMS PD Officers to support an intentional infliction of emotional distress claim.

G.  Whether Officer Jonathan Reyes is entitled to qualified immunity on the federal claims.

## II. STATEMENT OF FACTS

### A. Plaintiff's Allegations

According to the amended complaint (Doc. 39), Plaintiff Daniele Reimann's vehicle broke down at 248 University Avenue in Los Gatos, California on August 20, 2022. (Hewitt Decl., Exh, 1, ¶13.) She left her vehicle with the hazard lights on and walked to Old Town Los Gatos to finish her errands. (Id. at ¶14.) When Plaintiff returned, her vehicle was gone. (Id. at ¶15.) She approached a nearby residence and sat on a bench on the front porch of the residence, in distress about her missing car. A man came out of the home and asked if she needed help, and she told him she could not find her car. The man then walked back inside his house. (Id. at ¶16.) The residents of the house contacted the Los Gatos Monte Sereno Police Department ("LGMS PD") to ask for assistance to remove the intoxicated woman, Plaintiff Reimann, from their front porch. (Id. at ¶17.) LGMS PD Officer Jonathan Reyes and other officers arrived at the residence, and "without speaking to plaintiff Reimann," they grabbed her arm, placed her in handcuffs, and falsely arrested her for public intoxication, "without ever saying a word to plaintiff." (Id. at ¶18.) Plaintiff alleges that the handcuffs were clinched down so tightly that they caused "substantial physical injuries and excruciating pain to the plaintiff's wrists." (Id. at ¶19.) Plaintiff was then transported to the LGMS PD and thereafter transported by Officers Reyes and others to the Santa Clara County Main Jail. (Id. at ¶58.) She alleges that the LGMS PD officers did not perform a breath-alcohol or blood-alcohol

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

1   test to determine if she was intoxicated, which would have proved she was innocent of the Penal

2   Code section 647(f).  (Id. at ¶23.)  She further alleges the LGMS PD failed to properly train its

3   officers, in violation of 42 U.S.C. section 1983, including to "take persons to a facility for the

4   treatment of inebriants pursuant to Cal. Penal Code § 647(f), rather than to take them and to keep

5   them confined in a jail facility." (Id. at ¶¶37, 38, 40.) Plaintiff seeks $3,000,000 in compensatory

6   damages, punitive damages against the individual officers, and $9,000,000 in treble damages. (Id. at

7   pp. 23-24.)

8     **B.  Statement of Undisputed Facts**

9       At 18:22:06 hours on August 20, 2022, LGMS PD received a call for service regarding an

10  unoccupied vehicle in the middle of the road on University Avenue in Los Gatos. LGMS PD Officer

11  Jonathan Reyes and Corporal Mario Carrizosa were dispatched to the location. (Declaration of

12  Jonathan Reyes filed herewith ("Reyes Decl."), ¶ 3) (Declaration of Mario Carrizosa filed herewith

13  ("Carrizosa Decl."), ¶ 3) (Declaration of Yolanda Lira filed herewith ("Lira Decl."), ¶ 2.b & Exh. C.)

14  When they arrived at that location at approximately 1835 hours, there was a silver 1999 Mazda 626

15  four-door sedan with California license plate number 4BWX208 parked in the middle of the

16  southbound lane of University Avenue, a two-lane road; a video from the patrol vehicle camera

17  captured the vehicle at that location. (Reyes Decl., ¶ 3) (Carrizosa Decl., ¶ 3) (Lira Decl. Exh. D.)

18  The vehicle was obstructing traffic and causing the traffic to back up in the southbound direction, so

19  Officer Reyes arranged for traffic control and they shut down the southbound lane of University

20  Avenue in that area. (Reyes Decl., ¶¶ 3, 4) (Carrizosa Decl., ¶¶ 3, 4) (Lira Decl. Exh. A, B, C, D.)

21  The LGMS PD's computer database revealed that the registered owner of the vehicle was Daniele

22  Reimann. (Reyes Decl., ¶ 5) (Carrizosa Decl., ¶ 5) (See Lira Decl. Exh. A, B, C.) Officer Reyes

23  contacted LGMS PD dispatch to call for a tow truck since the vehicle was a hazard on the roadway.

24  The roadway was shut down for approximately twenty-five (25) minutes until the tow truck arrived

25  and towed the vehicle away at approximately 1919 hours for a California Vehicle Code section

26  22651(b) violation. Officer Reyes and Cpl. Carrizosa left the scene at approximately 1919 hours

27  after the vehicle was towed.  (Reyes Decl., ¶¶ 6, 7) (Carrizosa Decl., ¶ 6) (Lira Decl. Exh. A; B; C

28  (starting at approx. 0:08:22).)

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ          3
Case No. 5:23-cv-04134-NC

The entire time Reyes and Carrizosa were on scene for this vehicle incident, the subject vehicle was unoccupied, and they saw no one in the area who appeared to be the owner or otherwise associated with the vehicle. (Reyes Decl., ¶ 8) (Carrizosa Decl., ¶ 7) (Lira Exh. A, C, D.)

At 20:08:22 hours, LGMS PD received the call from reporting party Joan Cross reporting a woman at her front door who was really out of control saying something about her car blocking traffic. (Lira Decl., ¶ 2.f & Exh. F.)   At 2012 hours, Officer Reyes and Cpl. Carrizosa were dispatched to 231 University Avenue for a suspicious subject, possibly related to the earlier vehicle tow. Dispatch advised Officer Reyes that the subject was a white female in her fifties who appeared distressed and possibly under the influence of alcohol or drugs per the reporting party husband; the female subject was saying that her car was blocking or broken down. (Reyes Decl., ¶ 10) (Carrizosa Decl., ¶ 9)  (Lira Decl. Exh. E; F; G (starting at approx. 0:03:09).)

When Reyes and Carrizosa arrived at 231 University Avenue in Los Gatos, they saw a white, middle-aged woman sitting on a bench on the front porch of the residence and she advised them her name was Daniele Reimann, confirmed by her driver's license provided to Officer Reyes. She refused to leave the front porch of the residence when Officer Reyes asked her to do so. She told officers that she was neighbors with the resident and lived down the street. She then stated she was local, from San Jose. When the officers spoke with her, Ms. Reimann's eyes appeared red, her speech was slow and slurred, her body movements were slow and hand gestures exaggerated. Her hair was disheveled. Her speech was rambling, and she made comments that seemed inappropriate in the context of the conversation (e.g., repeatedly saying everything is "fabulous," "kudos, kudos"). She did not appear to know where she was, as she insisted that she lived in the neighborhood which was inaccurate based on her statement that she lived in San Jose and her driver's license which reflected a San Jose address. She had an odor of alcoholic beverage. Based on their training and experience, both Officer Reyes and Cpl. Carrizosa concluded that Reimann showed the signs of alcohol intoxication.  (Reyes Decl., ¶ 11) (Carrizosa Decl., ¶ 10) (Lira Decl. Exh. K (starting at 0:00:58; Exh. I (starting at approx. 0:00:58; Exh. H (starting at approx. 0:00:57).) Officer Reyes informed Ms. Reimann that she needed to leave the residence because this was not her residence; she refused to leave the residence. (Reyes Decl., ¶ 12) (Lira Decl. Exh. K (starting at

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                    4
Case No. 5:23-cv-04134-NC

0:00:58); Exh. I (starting at approx. 0:00:58); Exh. H (starting at approx. 0:00:57).)

Officer Reyes entered the residence to speak with the reporting parties, while Officer S. Floerchinger and Cpl. Carrizosa stayed on or near the porch with Ms. Reimann and spoke with her. During the conversation, she did not answer the question when asked if she knew where she was. When she mentioned her car, Carrizosa informed her that it had been towed earlier because it was a hazard, but she stated that she was there, which he knew not to be true. She then stated that she left the vehicle and went to Steamer's restaurant. She has in possession of a paper bag with the name "Steamers" printed on it. She told them her two addresses, both in San Jose, and that she could walk home. (Carrizosa Decl., ¶ 11) (Lira Decl. Exh. K (starting at approx. 0:05:03); Exh. H (starting at approx. 0:02:58).)

Officer Reyes spoke to the reporting parties, Glenn Cross and his wife, in their residence. Mr. Cross advised Reyes that they did not know Reimann. Mr. Cross relayed that Reimann had knocked at their front door and asked if he knew where her (Reimann's) vehicle was. (Lira Decl. Exh. I (0:05:05 – 0:08:54).)  She told him that she had been at Steamer's. At his deposition, Glenn Cross described Plaintiff Reimann's behavior on August 20, 2022 as out of control, obnoxious, a bit pushy and very rambling during interactions with her at his residence – she appeared disturbed, mad, angry, confused, and intoxicated. And although Mr. Cross asked Plaintiff Reimann repeatedly to leave his residence, she would not do so. (Hewitt Decl., Exh. 4: pp. 8:8 – 11:17; 16:18 – 17:8; 21:17 – 22:6; 28:8 – 31:4 & Hewitt Decl. Exh. 5.)

Officer Reyes exited the residence to resume speaking with Daniele Reimann on the porch, and Cpl. Carrizosa informed Reyes that Ms. Reimann did not live nearby and there was no one home (to pick her up). The two of them had a brief discussion and concluded that they would take her to the sobering center (Santa Clara Behavioral Health Sobering Center) in San Jose.  (Reyes Decl., ¶¶ 12, 13) (Carrizosa Decl., ¶ 12) (Lira Decl. Exh. K (starting at approx. 0:08:42); Exh. I (starting at approx. 0:08:46); Exh. H (starting at approx. 0:08:06).)

Based on all of Officer Reyes' observations of Daniele Reimann; statements made by Reimann and the reporting parties and statements relayed to him by Corporal Carrizosa; Reimann's refusal to leave the reporting parties' residence, with no one to pick her up and safely transport her

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

5

1   home, Reyes determined that Daniele Reimann was unable to care for herself due to her alcohol

2   intoxication, and believed there was probable cause to take her into custody for a violation of Penal

3   Code 647(f). Officer Reyes advised Reimann that they were going to get her some help to make sure

4   she could sober up, somewhere she could sleep it off. She insisted that her house was down the

5   street. (Reyes Decl., ¶ 14) (Lira Decl. Exh. K (starting at approx. 0:00:58); Exh. I (starting at approx.

6   0:00:58); Exh. H (starting at approx. 0:00:57).)

7          Based on Cpl. Carrizosa's observations of Daniele Reimann and his training and experience,

8   it appeared that Daniele Reimann was experiencing alcohol intoxication and was unable to care for

9   herself due to her alcohol intoxication, and Carrizosa likewise believed there was probable cause to

10  take her into custody for a violation of Penal Code 647(f). (Carrizosa Decl., ¶ 13) (Lira Decl. Exh. K

11  (starting at approx. 0:00:58); Exh. I (starting at approx. 0:00:58); Exh. H (starting at approx.

12  0:00:57).)

13         Plaintiff Reimann reviewed the videos reflecting the August 20, 2022 events at issue, but has

14  no independent memory of having any conversations with the LGMS PD officers that day. (Hewitt

15  Decl., Exh. 3: pp. 61:18 – 62:13; 75:22-23; 77:22 – 78:15; 79:5-11; 80:1 – 81:8; 81:21 – 83:11 &

16  Plaintiff's Deposition Exh. 5.).

17         LGMS PD policies do not require a breath or blood alcohol test for a person taken into

18  custody for a Penal Code section 647(f) violation.  (Reyes Decl., ¶ 14) (Carrizosa Decl., ¶ 13.)

19         As clearly demonstrated by the video evidence, Cpl. Carrizosa and Officer Reyes gently

20  assisted Ms. Reimann to her feet from the bench on the front porch by supporting her under each

21  arm. She was able to stand with minimal assistance although her movements were somewhat slow

22  and unsteady. Once standing, she complied as Carrizosa and Reyes guided her hands behind her

23  back and Reyes applied the handcuffs to her wrists, checking the fit on each wrist with two fingers to

24  make sure the handcuffs were not too tight and he double locked them to make sure the cuffs would

25  not tighten further. They carefully assisted her down the stairs of the porch. (Reyes Decl., ¶ 15)

26  (Carrizosa Decl., ¶ 14) (Lira Decl. Exh. K (starting at approx. 0:09:37); Exh. I (starting at approx.

27  0:09:37); Exh. H (starting at approx. 0:08:56)) (Hewitt Decl., Exh. 2 (screenshots of video depicting

28  handcuffs on Plaintiff).)

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                                    6
Case No. 5:23-cv-04134-NC

1  Officer Reyes walked to the patrol vehicle and drove it to the front of the residence in order

2  to shorten the distance Plaintiff Reimann would have to walk. Corporal Carrizosa escorted her to

3  their patrol vehicle, and Carrizosa and Reyes assisted her into the back of the patrol vehicle. Reyes

4  placed her purse and Steamer's paper bag into the back of the patrol vehicle. They got into the patrol

5  vehicle and drove her to the Santa Clara Behavioral Health Sobering Center ("sobering center").

6  (Reyes Decl., ¶ 16) (Carrizosa Decl., ¶ 15) (Lira Decl. Exh. K (starting at approx. 0:10:45); Exh. I

7  (starting at approx. 0:10:48); Exh. H (starting at approx. 0:10:19); Exh. J (starting at approx.

8  0:00:59).)

9  When they arrived at the sobering center, Officer Reyes exited the patrol vehicle and spoke

10  with a female staff person. She came to the patrol vehicle and spoke with Plaintiff Reimann who

11  refused a COVID test, and the staff person indicated that the sobering center would not accept her.

12  Therefore, the other option was to take Ms. Reimann to the Santa Clara County Jail for her to safely

13  sober up. Reyes got back in the patrol vehicle and they drove Plaintiff to the Santa Clara County

14  Main Jail. (Reyes Decl., ¶ 17) (Carrizosa Decl., ¶ 16) (Lira Decl. Exh. L (starting at approx.

15  0:28:35).)

16  Plaintiff Reimann reviewed the videos reflecting the August 20, 2022 events at issue, but has

17  no independent memory of stopping at the sobering center, being asked to take a COVID test or

18  refusing to take a COVID test. (Hewitt Decl., Exh. 3: pp. 83:23 – 84:10; 90:14 – 91:23; 92:11-13.)

19  At approximately 2107 hours, they arrived at the sally port of the jail. Officer Reyes parked

20  the vehicle, walked to the back of the patrol vehicle, and began preparing paperwork for Reimann's

21  jail booking. (Reyes Decl., ¶ 18) (Carrizosa Decl., ¶ 17) (Lira Decl. Exh. L (starting at approx.

22  0:39:45).)

23  Officer Reyes opened the back door of the patrol vehicle and asked Plaintiff her telephone

24  number, if she was a citizen and where she was born.  She did not answer the questions. He again

25  approached her and asked if she had any medical conditions which she denied. He asked her to exit

26  the patrol vehicle, which she did with minimal assistance.  They walked into the jail for Plaintiff to

27  be processed and booked at the jail. (Reyes Decl., ¶ 19) (Carrizosa Decl., ¶ 18) (Lira Decl. Exh. L

28  (starting at approx. 0:39:44); Exh. N through S.)

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

7

1    In the sallyport intake area, Plaintiff Reimann refused to sit down. Officer asked her to take a

2    seat. Corporal Carrizosa and Officer Reyes each placed one hand on her shoulder to sit her down in

3    the chair. (Lira Decl. Exh. O (starting at approx. 0:00:24).) After preparing paperwork, they escorted

4    Reimann into another room. (Reyes Decl., ¶ 20) (Carrizosa Decl., ¶ 19) (Lira Decl. Exh. O (starting

5    at approx. 0:11:00).)

6    Corporal Carrizosa and Officer Reyes then led Plaintiff Reimann into another room of the

7    jail. At that time, Officer Reyes asked Ms. Reimann "If I take off these handcuffs, are you going to

8    cooperate?" (Reyes Decl., ¶ 21) (Lira Decl. Exh. P, starting at approx. 0:00:16.) Among her

9    statements in response to his question, Ms. Reimann stated "okay, keep them on." (Reyes Decl.,

10   ¶ 21) (Id., starting at approx. 0:00:26.)  They waited in the room before taking Ms. Reimann to

11   another room for an interview with a jail deputy. (Reyes Decl., ¶ 21) (Carrizosa Decl., ¶ 20) (Lira

12   Decl. Exh. P.)

13   Plaintiff Reimann reviewed the videos reflecting the August 20, 2022 events at issue, but she

14   has no independent memory of any officer asking if she would cooperate if he took the handcuffs

15   off. (Hewitt Decl., Exh. 3: pp. 93:1-5.)

16   Officer Reyes then escorted Reimann to an interview room where she sat on a metal bench.

17   (Lira Decl. Exh. Q (starting at approx. 0:01:37).) Officer Reyes entered the room a few moments

18   later, guided his arm around plaintiff Reimann's right arm, and she stood and he escorted her out of

19   the room. (Reyes Decl., ¶ 22) (Lira Decl. Exh. Q.)

20   Officer Reyes escorted Plaintiff Reimann into the female booking room as Cpl. Carrizosa

21   observed. (Reyes Decl., ¶ 23) (Carrizosa Decl., ¶ 21) (Lira Decl. Exh. R.)  A male jail deputy and a

22   female jail deputy each took hold of Ms. Reimann's arms and escorted her to a seat in the room.

23   (Lira Decl. Exh. S, starting at approx. 0:01:25).) A female jail staff person took Reimann's vitals as

24   Officer Reyes stood nearby and waited for them to return his handcuffs while Cpl. Carrizosa stood

25   by the desk. (Reyes Decl., ¶ 24) (Carrizosa Decl., ¶ 22) (Lira Decl. Exh. S, starting at approx.

26   0:02:36.).)

27   The male and female jail deputies removed Reyes' handcuffs from Reimann and handed

28   them to him. Corporal Carrizosa and Officer Reyes then exited the room and left the jail. (See Lira

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ          8
Case No. 5:23-cv-04134-NC

1   Exh. S (starting at approx. 0:04:50).)  This was the end of their interactions with Daniele Reimann

2   and Carrizosa and Reyes left in their patrol vehicle. (Reyes Decl., ¶ 25) (Carrizosa Decl., ¶ 23.)

3          Cpl. Carrizosa and Officer Reyes used the minimum pressure required when each of them

4   touched Reimann during the encounter with her. (Reyes Decl., ¶ 27) (Carrizosa Decl., ¶ 25) (Lira

5   Decl. Exh. H through S.)  During the interaction with Ms. Reimann, she did not appear to be in pain

6   or express that she was experiencing any pain or discomfort. (Reyes Decl., ¶ 28) (Carrizosa Decl.,

7   ¶ 26) (Lira Decl. Exh. H through S.)

8          Plaintiff Reimann admits to drinking alcohol approximately five out of seven days per week

9   and when asked how much she drinks, she stated that she has never counted. (Hewitt Decl., Exh. 3:

10  pp. 113:15 – 114:25.)

11                            **III.    LEGAL STANDARD**

12          Summary judgment is appropriate where "there is no genuine issue as to any material fact"

13  and the moving party is entitled to judgment as a matter of law.  FRCP 56(a). The Court also has the

14  authority to grant a "partial" summary judgment under FRCP 56(a) where there is no dispute of

15  material fact as to a claim or defense.  The moving party "bears the initial responsibility of informing

16  the District Court of the basis for its motion, and identifying those portions of 'the pleadings,

17  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

18  which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v.*

19  *Catrett*, 477 U.S. 317, 323 (1986) (quoting FRCP 56(c).) Indeed, summary judgment should be

20  entered after adequate time for discovery and upon motion, against a party who fails to make a

21  showing sufficient to establish the existence of an element essential to that party's case, and on

22  which that party will bear the burden of proof at trial.  *Id.* at 322.

23          In attempting to establish the existence of this factual dispute, the opposing party may not

24  rely upon the allegations or denials of its pleadings but is required to tender evidence of specific

25  facts in the form of affidavits, and/or admissible discovery material, in support of its contention that

26  the dispute exists. See FRCP 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

27  586, n.11 (1986). The opposing party must demonstrate that the fact in contention is material –that it

28  might affect the outcome of the suit under the governing law [*see Anderson v. Liberty Lobby, Inc.*,

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

9

1    477 U.S. 242, 248 (1986); *T. W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626,

2    630 (9th Cir. 1987)], and that the dispute is genuine: that is, the evidence is such that a reasonable

3    jury could return a verdict for the nonmoving party. To demonstrate a genuine issue, the opposing

4    party "must do more than simply show that there is some metaphysical doubt as to the material

5    facts…[w]here the record taken as a whole could not lead a rational trier of fact to find for the

6    nonmoving party, there is no 'Genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

7                                    **IV.    ARGUMENT**

8        **A.    The Video Evidence Establishes That Defendants Are Entitled to Summary**
9               **Judgment**

10           While a plaintiff's allegations and evidence and reasonable inferences drawn from them are

11   usually viewed in the light most favorable to plaintiff, the court need not accept plaintiff's version of

12   events when defendants present evidence, such as video and audio recordings, which clearly

13   contradict the plaintiff's version of events so that no reasonable jury could believe it. *Scott v. Harris*,

14   550 U.S. 372 (2007); *see also Hughes v. Rodriguez*, 31 F.4th 1211, 1218–1220 (9th Cir. 2022) ("[A]

15   district court may properly view the facts in the light depicted by bodycam footage and its

16   accompanying audio, to the extent the footage and audio *blatantly* contradict testimonial evidence.");

17   *Maggay v. Micke*, No. 21-CV-04994 BLF (PR), 2023 WL 7284147, at *10–11 (N.D. Cal. Nov. 2,

18   2023) (applying *Scott v. Harris* analysis to find plaintiff's version of events was clearly refuted by

19   videos of the incident). In *Scott v. Harris*, the plaintiff sued a sheriff's deputy for excessive force

20   during a vehicle pursuit in which the plaintiff was severely injured. 550 U.S. at 375. The court of

21   appeal adopted the plaintiff's version of events and denied defendants' motion for summary

22   judgment since the parties' versions of events differed significantly. *Id.* at 378. However, a video

23   recording of the incident at issue told "quite a different story" and clearly contradicted plaintiff's

24   version of events.   On that basis, the Supreme Court overturned the court of appeal and held

25   defendants were entitled to summary judgment. *Id.*

26           While Plaintiff Daniele Reimann alleges that her civil rights were violated, she was falsely

27   arrested and subjected to excessive force, assaulted and battered by the LGMS PD officers'

28   "outrageous" conduct, the undisputed video evidence clearly refutes all of her claims. The

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                    10
Case No. 5:23-cv-04134-NC

1    undisputed video evidence establishes that Plaintiff fails to make a showing sufficient to establish

2    the existence of the elements essential to her claims as discussed in detail below.  *See Celotex*, 477

3    U.S. at 322; (Reyes Decl., ¶¶ 3 - 28) (Carrizosa Decl., ¶¶ 3 - 26)  (Lira Decl. Exhs. A - S) Because

4    Reimann has no evidence from which a reasonable jury could return a verdict in her favor,

5    Defendants are entitled to summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio*

6    *Corp.*, 475 U.S. at 586, n.11.

7        **B.    Plaintiff's Fourth Amendment and False Arrest/Imprisonment Claims Fail as
             the Undisputed Evidence Demonstrates that the Officers' Actions were**

8        **Reasonable and Probable Cause Existed To Take Her Into Custody**

9        Plaintiff Reimann's first (Fourth Amendment unreasonable seizure) and fifth (false

10   arrest/false imprisonment) claims fail as a matter of law as demonstrated by the video evidence

11   which clearly contradicts her allegations.  *See Scott v. Harris*, 550 U.S. at 381.

12       "If an officer has probable cause to believe that an individual has committed even a very

13   minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the

14   offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (Plaintiff arrested, handcuffed

15   and jailed for failing to seatbelt her and her children, failing to provide proof of insurance, and

16   driving without license.) "Probable cause to arrest exists when officers have knowledge or

17   reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that

18   an offense has been or is being committed by the person being arrested." *Torres v. City of Los*

19   *Angeles*, 548 F.3d 1197, 1206 (9th Cir. 2008), *quoting United States v. Lopez*, 482 F.3d 1067, 1072

20   (9th Cir. 2007). Probable cause "is not a high bar" and is determined from the reasonable officer's

21   perspective. *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018) (citation omitted); *see also*

22   *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021). Under California law, a false

23   arrest/imprisonment claim likewise fails if the officer has probable cause to believe a crime had been

24   committed in his presence. See Judicial Council of California Civil Jury Instructions (CACI) 1402

25   (2024 Edition).

26       Plaintiff's complaint alleges that LGMS PD officers falsely arrested and imprisoned her for

27   public intoxication (Penal Code section 647(f)) "without ever saying a word to plaintiff." (Hewitt

28   Decl., Exh. 1, ¶18.) She alleges that the LGMS PD officers did not perform a breath-alcohol or

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC                                11

1   blood-alcohol test to determine if she was intoxicated, which would have proved her innocence of

2   Penal Code section 647(f). (Id. at ¶23.) She further alleges the LGMS PD failed to properly train

3   officers to "take persons to a facility for the treatment of inebriants pursuant to Cal. Penal Code §

4   647(f), rather than to take them and to keep them confined in a jail facility." (Id. at ¶¶37, 38, 40.)

5          A person is guilty of public intoxication under California Penal Code section 647(f) when

6   found "in any public place under the influence of intoxicating liquor, any drug, controlled substance,

7   toluene, or any combination of any intoxicating liquor, drug, controlled substance, or toluene, in a

8   condition that they are unable to exercise care for their own safety or the safety of others…" The

9   objective evidence establishes that there was probable cause to believe Plaintiff Daniele Reimann

10   was intoxicated and could not care for herself, in violation of Section 647(f). Plaintiff Reimann had

11   left her car unattended in the middle of the road for close to two hours, when LGMS PD made

12   contact with her. (Reyes Decl., ¶¶ 3 - 11) (Carrizosa Decl., ¶¶ 3 - 10) (Lira Decl. Exhs. A - K.)  At

13   2012 hours, Officer Reyes and Cpl. Carrizosa were dispatched to 231 University Avenue for a

14   suspicious subject, possibly related to the earlier vehicle tow. Dispatch advised Officer Reyes that

15   the subject was a white female in her fifties who appeared distressed and possibly under the

16   influence of alcohol or drugs per the reporting party husband; the female subject was saying that her

17   car was blocking or broken down. (Reyes Decl., ¶ 10) (Carrizosa Decl., ¶ 9) (Lira Decl. Exhs. E; F;

18   G (starting at approx. 0:03:09).) Officer Reyes spoke to the reporting parties, Glenn Cross and his

19   wife, in their residence after he arrived on scene. Mr. Cross advised Reyes that they did not know

20   Reimann. Mr. Cross relayed that Reimann had knocked at their front door and asked if he knew

21   where her (Reimann's) vehicle was. (Lira Decl. Exh. I (0:05:05 – 0:08:54).) Notably, Mr. Cross

22   described Plaintiff Reimann's behavior as out of control and rambling; she appeared confused and

23   *intoxicated*. (See also Hewitt Decl., Exh. 4: pp. 8:8 – 11:17; 16:18 – 17:8; 21:17 – 22:6; 28:8 – 31:4

24   & Hewitt Decl. Exh. 5.) When Reyes and Carrizosa spoke with the Plaintiff, she smelled of alcoholic

25   beverage. She refused to leave the front porch of the residence when Officer Reyes repeatedly asked

26   her to do so and claimed that she was a neighbor and lived down the street, despite her inconsistent

27   statement that she lived in San Jose. Plaintiff Reimann's eyes appeared red, her speech was slow and

28   slurred, her body movements were slow and hand gestures exaggerated. Her hair was disheveled.

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

12

1   Her speech was rambling and she made comments that seemed inappropriate in the context of the

2   conversation. (Reyes Decl., ¶¶ 10 - 17) (Carrizosa Decl., ¶¶ 10 - 16) (Lira Decl. Exhs. H, I, J, K.)

3        Officer Reyes entered the residence to speak with the reporting parties, while Officer S.

4   Floerchinger and Cpl. Carrizosa stayed with Ms. Reimann and spoke with her. During the

5   conversation, she did not answer the question when asked if she knew where she was. When she

6   mentioned her car, Carrizosa informed her that it had been towed earlier because it was a hazard, but

7   she stated that she was there, which he knew not to be true. She then stated that she left the vehicle

8   and went to Steamer's restaurant. She has in possession of a paper bag with the name "Steamers"

9   printed on it. She told them her two addresses, both in San Jose, and that she could walk home.

10  (Carrizosa Decl., ¶ 11) (Lira Decl. Exh. K (starting at approx. 0:05:03); Exh. H (starting at approx.

11  0:02:58).)

12       Officer Reyes exited the residence and back onto the porch, and Cpl. Carrizosa informed

13  Reyes that Ms. Reimann did not live nearby and there was no one home (to pick her up). The two of

14  them had a brief discussion and concluded that they would take her to the sobering center (Santa

15  Clara Behavioral Health Sobering Center) in San Jose.  (Reyes Decl., ¶¶ 12, 13) (Carrizosa Decl.,

16  ¶ 12) (Lira Decl. Exh. K (starting at approx. 0:08:42); Exh. I (starting at approx. 0:08:46); Exh. H

17  (starting at approx. 0:08:06).)

18       Based on their training and experience, Officer Reyes and Cpl. Carrizosa concluded that

19  Reimann showed the signs of alcohol intoxication.  (Reyes Decl., ¶ 11) (Carrizosa Decl., ¶ 10) (Lira

20  Decl. Exh. K (starting at 0:00:58); Exh. I (starting at approx. 0:00:58); Exh. H (starting at approx.

21  0:00:57).)

22       Clearly, both Officer Reyes and Cpl. Carrizosa, as well as a LGMS PD Officer Floerchinger,

23  engaged in conversations with Plaintiff Reimann. Yet, Plaintiff's complaint had incredibly alleged

24  that they "*without speaking to plaintiff Reimann*," they placed her in handcuffs, and falsely arrested

25  her for public intoxication (Penal Code section 647(f)) "*without ever saying a word to plaintiff*."

26  (Hewitt Decl., Exh, 1, ¶18 (*emphasis added*).)   Plaintiff's memory of the events is poor: at

27  deposition, Plaintiff Reimann admitted that she had *no* independent memory of having any

28  conversations with the LGMS PD officers. (Hewitt Decl., Exh. 3: pp. 61:18 – 62:13; 75:22-23; 77:22

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

13

– 78:15; 79:5-11; 80:1 – 81:8; 81:21 – 83:11 & Plaintiff's Deposition Exh. 5.).

Based on the officers' observations; the statements made by Reimann and the reporting parties; Plaintiff's refusal to leave the reporting parties' residence with no one to pick her up and safely get her home, Carrizosa and Reyes determined that Plaintiff was unable to care for herself due to her alcohol intoxication, and believed there was probable cause to take her into custody for a violation of Penal Code 647(f). Carrizosa and Reyes had a brief discussion and concluded under the circumstances that they would take her to the sobering center (Santa Clara Behavioral Health Sobering Center) in San Jose.  (Reyes Decl., ¶¶ 12, 13) (Lira Decl. Exh. K (starting at approx. 0:08:42); Exh. I (starting at approx. 0:08:46); Exh. H (starting at approx. 0:08:06).)  Officer Reyes advised Reimann that they were going to get her some help to make sure she could sober up, somewhere she could sleep it off. (Reyes Decl., ¶ 14) (Lira Decl. Exh. K (starting at approx. 0:00:58); Exh. I (starting at approx. 0:00:58); Exh. H (starting at approx. 0:00:57).)

Plaintiff claims that the LGMS PD failed to properly train its officers to "take persons to a facility for the treatment of inebriants pursuant to Cal. Penal Code § 647(f), rather than to take them and to keep them confined in a jail facility." (Hewitt Decl., Exh. 1, ¶¶37, 38, 40.)  However, Cpl. Carrizosa and Officer Reyes did attempt to take her to the sobering center, but Reimann refused to submit to a COVID test, and the sobering center therefore would not accept her.  As a result, the LGMS PD officers took her to the county jail so she could sober up. (Reyes Decl., ¶ 17) (Carrizosa Decl., ¶ 16) (Lira Decl. Exh. L (starting at approx. 0:28:35).)

 A plaintiff cannot prevail on a Fourth Amendment or state law false arrest claim when probable cause exists. *See Atwater v. City of Lago Vista*, 532 U.S. at 354; see also CACI 1402. "Probable cause exists when, 'under the totality of the circumstances known to the arresting officers, a prudent person would have concluded that there was a fair probability that [the defendant] had committed a crime.'" *United States v. Potter*, 895 F.2d 1231, 1233–34 (9th Cir.) (*quoting U.S. v Smith*, 790 F.2d 789, 792 (9th Cir. 1986). Probable cause is not a high bar. *District of Columbia v. Wesby*, 138 S. Ct. at 586; *O'Doan v. Sanford*, 991 F.3d at 1043.

There is no evidence from which a reasonable jury could find in Plaintiff's favor on her Section 1983 unreasonable seizure and state law false arrest/false imprisonment claims; Defendants

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

14

1  are entitled to summary judgment.

2  **C.      Plaintiff Has Failed to Establish a *Monell* Claim Against the Town of Los Gatos**

3       In the third cause of action, Plaintiff alleges a Section 1983 claim against the Town of Los

4  Gatos. (Hewitt Decl., Exh. 1, ECF pp.10-14.)  However, her claim fails as a matter of law as there is

5  no evidence to establish *Monell* liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658 (1978).

6       Plaintiff claims that the LGMS PD failed to properly train its officers to "take persons to a

7  facility for the treatment of inebriants pursuant to Cal. Penal Code § 647(f), rather than to take them

8  and to keep them confined in a jail facility." (See Hewitt Decl., Exh. 1, ¶¶ 37, 38, 40.)  Plaintiff's

9  allegation that the officers were not properly trained to take inebriants to a facility is baseless – the

10  officers clearly attempted to take her to the sobering center, but Plaintiff refused to comply with the

11  sobering center's requirement to take a COVID test for admittance; they then took her to the jail to

12  sober up. (Reyes Decl., ¶ 17) (Carrizosa Decl., ¶ 16) (Lira Decl. Exh. L (starting at approx.

13  0:28:35).)

14       There is no *respondeat superior* liability for local government entities under 42 U.S.C.

15  section 1983.  *Bd. of Bryan County v. Brown*, 520, U.S. 397, 403 (1997).  A local government entity

16  may be held liable under section 1983 only for constitutional injuries inflicted by edicts or acts that

17  may be fairly said to represent official custom, policy or practice of that entity.  *Monell*, 436 U.S. at

18  694.  In order to establish *Monell* liability, a plaintiff must demonstrate: 1) that she possessed a

19  constitutional right of which he was deprived, 2) that the local government entity had a policy,

20  custom or practice, 3) that this policy, custom or practice amounted to deliberate indifference to

21  plaintiff's constitutional rights, and 4) that this policy, custom or practice was the moving force

22  behind the constitutional violation.  *Oviatt by and through Waugh v. Pearce*, 954 F.2d 1470, 1474

23  (9th Cir. 1992). Further, where the relevant policy is not unconstitutional on its face, a plaintiff must

24  prove more than a single incident involving a constitutional violation in order to establish the

25  requisite fault on the part of the public entity and causal connection between the policy and the

26  alleged constitutional deprivation.  *City of Oklahoma v. Tuttle*, 471 U.S. 808, 824 (1985).  Random

27  acts or isolated events are insufficient.  *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1444 (9th

28  Cir. 1989), *overruled on other grounds as stated in Bull v. City & County of San Francisco*, 595

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                                    15
Case No. 5:23-cv-04134-NC

1    F.3d 964, 981 (9th Cir. 2010).

2         Failure to train can constitute a policy or custom "only where the failure to train amounts to

3    deliberate indifference to the rights of persons." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388

4    (1989). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal

5    actor disregarded a known or obvious consequence of his action." *Connick v. Thompson*, 131 S. Ct.

6    1350, 1360 (2011) (*quoting Board of Comm'rs of Bryan County v. Brown*, 520 U.S. 397, 410

7    (1997)). When policymakers "are on actual or constructive notice that a particular omission in their

8    training program causes...employees to violate citizens' constitutional rights, the [policymaker] may

9    be deemed deliberately indifferent if [he or she] choose to retain that program." *Id*.  Moreover, "[a]

10   pattern of similar constitutional violations by untrained employees is ordinarily necessary to

11   demonstrate deliberate indifference for purposes of failure to train." *Id*. (*quoting Bryan County*, 520

12   U.S. at 409) (internal quotations omitted).

13        As argued in this motion, no constitutional violation occurred – Plaintiff's *Monell* claim

14   against the Town of Los Gatos fails on that basis alone. (See Sections IV.A, B, D.)  Under *Monell*,

15   "[a] municipality may be held responsible for constitutional violations inflicted by its employees if

16   such actions are taken pursuant to the municipality's customs or policies. However, in order to

17   impose liability on a municipality under this theory there must be some underlying constitutional

18   violation." *City of Los Angeles v. Heller*, 475 U.S. 796, 798–99 (1986); *Monell v. Department of*

19   *Social Servs*., 436 U.S. 658 (1978).  The Supreme Court in *Heller* held that "neither [*Monell*] ... nor

20   any other of our cases authorizes the award of damages against a municipal corporation based on the

21   actions of one of its officers when in fact ... the officer inflicted no constitutional harm." *Id*. at 799.

22   Further, Plaintiff's Amended Complaint contains nothing more than threadbare, conclusory

23   allegations regarding a Town of Los Gatos policy, custom or practice that allegedly caused or

24   contributed to the alleged events at issue. (See Hewitt Decl., Exh. 1.) And Plaintiff has failed to

25   proffer any evidence that the Town maintains any custom, policy, or practice that led to any alleged

26   constitutional violation.

27        Plaintiff's Section 1983 claim against the Town also fails because she alleges only a single

28   incident, which is insufficient to establish liability against the Town of Los Gatos in this case.  *See*

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

16

1    *Thompson v. City of Los Angeles*, 885 F.2d at 1444; *City of Okla. v. Tuttle*, 471 U.S. 808, 823–24

2    (1985) (a policy of inadequate training is more nebulous and further removed from a constitutional

3    violation and thus requires more than a single incidence of unconstitutional activity); *see also*

4    *Blankenhorn v. City of Orange*, 485 F.3d 463, 484–85 (9th Cir.2007) ("absent evidence of a

5    program-wide inadequacy in training, any shortfall in a single officer's training can only be

6    classified as negligence on the part of the municipal defendant—a much lower standard of fault than

7    deliberate indifference.").

8         Plaintiff Daniele Reimann has no evidence to establish a Section 1983 claim against the

9    Town of Los Gatos and the Town is entitled to summary judgment on the third cause of action.

10         **D.    The Undisputed Material Facts Establish No Excessive Force, No Assault or
11              Battery**

12         Plaintiff Reimann's second (Fourth Amendment excessive force), sixth (battery) and seventh

13   (assault) claims are frivolous as demonstrated by the undisputed evidence.

14         The reasonableness of the use of force by law enforcement officers in the line of duty is

15   determined under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989). The force

16   that is used by an officer must be reasonable under the facts and circumstances of each incident,

17   based on the reasonable officer standard set forth in the Supreme Court's decision in *Graham v.*

18   *Connor*.  The operative question is whether the officers' actions were "objectively reasonable" in

19   light of the facts and circumstances confronting them. *Id.* at 397.

20         There are three core *Graham* factors: 1) the severity of the crime at issue; 2) whether the

21   suspect poses an immediate threat to the safety of the officers or others; and 3) whether he or she

22   is actively resisting arrest or attempting to evade arrest by flight. *Graham*, 490 U.S. at 396. The

23   facts and circumstances, which are legally relevant to the "objective reasonableness"

24   determination, are only those that were known to the officer at the time the force was used. *Id.* at

25   397. Officers are judged on the information that was available to them at the time of the incident

26   and the "totality of the circumstances," not with 20/20 hindsight. *See id.* at 397.

27         Under California tort law, an assault is the "demonstration of an unlawful intent by one

28   person to inflict immediate injury on the person of another then present." *Lowry v. Standard Oil Co.*,

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                17
Case No. 5:23-cv-04134-NC

63 Cal. App. 2d 1, 6-7 (1944); see also CACI 1301. For a plaintiff to prevail on a state law claim for assault, the plaintiff must demonstrate: "(1) that defendant intended to cause harmful or offensive contact, or the imminent apprehension of such contact, and (2) that plaintiff was put in imminent apprehension of such contact." *Brooks v. United States*, 29 F. Supp. 2d 613, 617 (N.D. Cal.1998) (citation omitted).

A state law battery claim requires a plaintiff to prove: (1) the defendant touched her with the intent to harm or offend; (2) the plaintiff did not consent to the touching; (3) the plaintiff was harmed or offended by the defendant's conduct; and (4) a reasonable person in the plaintiff's situation would have been offended by the touching. CACI 1300. A claim for battery against a peace officer must show that "(1) [the] defendant intentionally performed an act that resulted in a harmful or offensive contact with the plaintiff's person; (2) [the] plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss or harm to [the] plaintiff." *Brown v. Ransweiler*, 171 Cal. App. 4th 516, 527 (2009). The plaintiff has the burden of proving that the officer used unreasonable force. *See Saman v. Robbins*, 173 F.3d 1150, 1157 n. 6 (9th Cir.1999) (to prove a prima facie case for battery, the plaintiff must prove that the "officer used unreasonable force against him to make a lawful arrest or detention."); *Edson v. City of Anaheim*, 63 Cal. App. 4th 1269, 1272 (1998) ("Plaintiff must prove unreasonable force as an element of the tort.").

There is no dispute that Officer Reyes and Corporal Carrizosa had physical contact with Plaintiff during the encounter with her — while assisting her from the porch of the residence, handcuffing her, walking to the patrol car, assisting her in and out of the patrol vehicle, and escorting her through the jail. Plaintiff's complaint alleges that LGMS PD Officer Jonathan Reyes and other officers arrived at the residence, and "without speaking to plaintiff Reimann," they "forcefully, violently and brutally grabbed" plaintiff's arm, "causing her injury to her arm with accompanying bruising," placed her in handcuffs, and falsely arrested her for public intoxication (Penal Code section 647(f)) "without ever saying a word to plaintiff." (Hewitt Decl., Exh. 1, ¶18.) She alleges that the handcuffs were clinched down so tightly that they caused "substantial physical injuries and excruciating pain to the plaintiff's wrists." (Id. at ¶19.)

///

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

18

1  Yet, Plaintiff's recollection of the events of August 20, 2022 is poor. (See Hewitt Decl., Exh.

2  3: pp. 61:18 – 62:13; 75:22-23; 77:22 – 78:15; 79:5-11; 80:1 – 81:8; 81:21 – 83:11; 83:23 – 84:10;

3  90:14 – 91:23; 92:11-13; 93:1-5 & Plaintiff's Deposition Exh. 5.) She could not recall speaking with

4  the LGMS PD officers that night, could not recall stopping at the sobering center or refusing to take

5  a COVID test there, nor could she recall being asked if she would cooperate if Officer Reyes

6  removed her handcuffs. (Id.)

7  The undisputed video evidence, however, reveals what transpired on August 20, 2022. The

8  video footage demonstrates that the LGMS PD officers' physical contact with Plaintiff was not

9  excessive and did not constitute a "harmful or offensive contact" with her.  On the contrary, the

10  videos show that the officers gently assisted her to standing, escorted her, assisted her in and out of

11  the patrol vehicle, and into jail custody where a male jail deputy and a female jail deputy each took

12  hold of Ms. Reimann's arms and escorted her to a seat in the room. (Lira Decl. Exhs. G – S; see Exh.

13  S, starting at approx. 0:01:25).) Reimann was very talkative during the incident but did not express

14  or show signs of pain.  While excessively tight handcuffs can constitute excessive force, the videos

15  show that Plaintiff's handcuffs were not overtightened, nor did she complain or appear to be

16  experiencing discomfort or pain. *See, e.g., Hupp v. City of Walnut Creek*, 389 F.Supp.2d 1229, 1232

17  (N.D. Cal. 2005) (granting summary judgment for defendants where there was no evidence "of a

18  physical manifestation of injury or of a complaint about tight handcuffs that was ignored.");

19  *Yaroshinsky v. City of Los Angeles*, 2021 WL 4312567, at *8 (C.D. Cal. June 7, 2021), affirmed on

20  appeal, 2022 WL 17248095 (9th Cir. Nov. 28, 2022) (excessive force/assault/battery claim involving

21  handcuffing decided on summary judgment when incident captured on body-worn camera.)  Other

22  courts have found that there was no excessive force by officers even when some injury from

23  handcuffs occurred. *See, e.g., Williamson v. City of National City,* 23 F.4th 1146, 1149 (9th Cir.

24  2022) (no Fourth Amendment excessive force violation where officers handcuffed plaintiff and

25  carried or pulled her by her arms, causing plaintiff wrist and shoulder injuries, when plaintiff refused

26  to leave a protest rally); *Smith v. County of Orange*, 678 F.Supp.3d 1182, 1211–1212 (C.D. Cal.

27  2023), appeal dismissed sub nom, *Smith v. Packham*, 2023 WL 9291578 (9th Cir. Dec. 6, 2023)

28  ("Deputies' handcuffing Plaintiff in a manner where the handcuffs gave her bruises for three weeks

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

19

1    and potentially a small laceration was not excessive."); *Echevarria v. City of Santa Monica*, 2022

2    WL 2903123, at *9 (C.D. Cal. May 26, 2022) (finding no excessive force from handcuffing plaintiff

3    where she "suffered no pain or injury, and made no request for officers to loosen the cuffs");

4    *Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1092 (N.D. Cal. 2017) ("[N]o specific rule had been

5    articulated as to what amount of tightness makes handcuffs too tight, and the facts of the Ninth

6    Circuit's cases suggest[ ] that too-tight handcuffing usually involved significant injury to the hand

7    and/or a refusal to loosen the handcuffs once the cuffed person complained of the tightness.").

8         In this case, the video evidence, and the screenshots taken from this video footage,

9    demonstrate that Plaintiff's handcuffs were not overtightened: gaps and light can be visualized

10   between the handcuffs and Plaintiff's wrists. (See Reyes Decl., ¶ 15) (Carrizosa Decl., ¶ 14) (Lira

11   Decl. Exh. K (starting at approx. 0:09:37); Exh. I (starting at approx. 0:09:37); Exh. H (starting at

12   approx. 0:08:56) (Hewitt Decl., Exh. 2 (screenshots of video depicting handcuffs on plaintiff).)   In

13   fact, Officer Reyes offered to remove the handcuffs if Plaintiff would cooperate once they entered

14   the jail, but Plaintiff Reimann told him to "keep them on." (Lira Decl. Exh. P, starting at approx.

15   0:00:16.) (Reyes Decl., ¶ 21) (Carrizosa Decl., ¶ 20.)   There is no evidence of excessive force,

16   assault or battery and Defendants are entitled to summary judgment on the second, sixth and seventh

17   claims.

18        **E.    The Undisputed Material Facts Establish That No Bane Act Violation Occurred**

19        Plaintiff Daniele Reimann's fourth claim for violation of California's Bane Act, California

20   Civil Code section 52.1, likewise fails based on the undisputed evidence.

21        The Bane Act provides a cause of action for individuals who experience interference with

22   their federal or state rights "by threat, intimidation, or coercion, or attempts to interfere by threat,

23   intimidation, or coercion." See Cal. Civ. Code § 52.1(b). The Ninth Circuit has held that "the

24   elements of the excessive force claim under § 52.1 are the same as under § 1983." *Cameron v.*

25   *Craig*, 713 F.3d 1012, 1022 (9th Cir. 2013); *see also Chaudhry v. City of L.A.*, 751 F.3d 1096, 1105

26   (9th Cir. 2014).   In *Reese v. County of Sacramento*, the Ninth Circuit later held that the Bane Act

27   also required "'a specific intent to violate the arrestee's right to freedom from unreasonable

28   seizure.'" 888 F.3d 1030, 1043 (2018) (*quoting Cornell v. City & County of San Francisco*, 17 Cal.

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                    20
Case No. 5:23-cv-04134-NC

App. 5th 766, 801 (2017). However, "the Bane Act does not require the 'threat, intimidation or coercion' element of the claim to be transactionally independent from the constitutional violation alleged." *Id.*  In other words, the officer must intend "not only the force, but its unreasonableness, its character as more than necessary under the circumstances." *Reese*, 888 F.3d at 1045 (*quoting United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993).

As argued above, the evidence establishes that Plaintiff Reimann's rights were not violated when she was taken into custody by the LGMS PD based on her objective appearance of intoxication, refusal to leave the reporting parties' home, her apparent disorientation, and inability to care for herself and get home safely due to her intoxication. See Sections IV.A, B, D, *supra*.

Likewise, the LGMS PD officers' physical contact with Plaintiff Reimann did not constitute excessive use of force, assault or battery. As shown in the videos, Corporal Carrizosa and Officer Reyes gently assisted Ms. Reimann to her feet from the bench on the front porch by supporting her under each arm. She was able to stand with minimal assistance although her movements were somewhat slow and unsteady. Once standing, she complied as Carrizosa and Reyes guided her hands behind her back and Reyes applied the cuffs to her wrists, checking the fit on each wrist with two fingers to make sure the handcuffs were not too tight and he double locked them to make sure the cuffs would not tighten further. They carefully assisted her down the stairs of the porch. (Reyes Decl., ¶ 15) (Carrizosa Decl., ¶ 14) (Lira Decl. Exh. K (starting at approx. 0:09:37); Exh. I (starting at approx. 0:09:37); Exh. H (starting at approx. 0:08:56) (Hewitt Decl., Exh. 2 (screenshots of video depicting handcuffs on plaintiff).) Corporal Carrizosa escorted her to their patrol vehicle, and Carrizosa and Reyes assisted her into the back of the patrol vehicle.  (Reyes Decl., ¶ 16) (Carrizosa Decl., ¶ 15) (Lira Decl. Exh. K (starting at approx. 0:10:45); Exh. I (starting at approx. 0:10:48); Exh. H (starting at approx. 0:10:19); Exh. J (starting at approx. 0:00:59).) They walked into the jail for Plaintiff to be processed and booked. (Reyes Decl., ¶¶ 19 - 25) (Carrizosa Decl., ¶¶ 18 - 23) (Lira Decl. Exh. L (starting at approx. 0:39:44); Exh. N through S.)   When Officer Reyes offered to remove the handcuffs if Plaintiff would cooperate, she informed him to "keep them on." (Lira Decl. Exh. P, starting at approx. 0:00:16) (Reyes Decl., ¶ 21) (Carrizosa Decl., ¶ 20.)  There is no evidence to support Plaintiff's Bane Act claim, and summary judgment should be granted.

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

21

**F.     The Intentional Infliction of Emotional Distress Claim Fails as LGMS PD Officers Engaged in No Outrageous Conduct**

As evidenced by the video recordings, the LGMS PD officers' conduct during their encounter with Plaintiff Daniele Reimann was far from outrageous and her claim for intentional infliction of emotional distress (her eighth claim) fails as a matter of law.

Plaintiff alleges that the actions of the LGMS PD officers were outrageous, not conduct condoned by a civilized society, and that she experienced extreme emotional distress as a result of their actions. (Hewitt Decl., Exh, 1, ¶86, 87.)

Under California law,

"[a] cause of action for intentional infliction of emotional distress exists when there is '(1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct.' [citations omitted] A defendant's conduct is 'outrageous' when it is so 'extreme as to exceed all bounds of that usually tolerated in a civilized community.' [citations omitted] And the defendant's conduct must be 'intended to inflict injury or engaged in with the realization that injury will result.'"

*Hughes v. Pair*, 46 Cal.4th 1035, 1050-1051 (2009) (citations omitted); see also CACI 1600.

Plaintiff Reimann's claims against the Town of Los Gatos and its LGMS PD officers are untenable in light of the video evidence.  *See, e.g. Scott v. Harris*, 550 U.S. at 381.  The video footage demonstrates that the LGMS PD's officers' conduct was clearly not "outrageous" or intended to cause or in reckless disregard of causing Plaintiff emotional distress; nor did Plaintiff appear to be experiencing severe or extreme emotional distress from the officers' actions during the August 20, 2022 encounter. (See Reyes Decl., ¶¶ 3 - 28) (Carrizosa Decl., ¶¶ 3 - 26) (Lira Decl. Exhs. E - S) (Hewitt Decl., Exh. 2 (screenshots of video depicting handcuffs on plaintiff).) Defendants are entitled to summary judgment.

**G.     Alternatively, LGMS PD Officer Reyes Is Entitled to Qualified Immunity**

While the Town of Los Gatos and LGMS PD Officer Jonathan Reyes submit that no constitutional violation occurred, Officer Reyes would also be entitled to qualified immunity for his actions on August 20, 2022. A two-part test is utilized to determine whether a defendant is entitled to qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001).  The court first determines whether

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

22

1   the factual allegations would make out a constitutional violation. If not, the inquiry stops there. If a

2   constitutional violation could be stated based on the parties' submissions, the court must determine

3   whether the law as to that particular right was clearly established. Id. at 201. This inquiry must be

4   "undertaken in light of the specific context of the case, not as a broad general proposition." *Id*.; *see*

5   *also Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011) (the term "clearly established law" should not be

6   defined "at a high level of generality"). The established law must be "particularized" to the facts of

7   each case: "in the light of pre-existing law the unlawfulness must be apparent." *Anderson v.*

8   *Creighton*, 483 U. S. 635, 640 (1987).  While a case directly on point is not required, the "existing

9   precedent must have placed the statutory or constitutional question **beyond debate**." *White v.*

10  *Pauly*, 137 S. Ct. 548, 551 (2017), *citing Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (**emphasis**

11  **added**).

12          If clearly established law exists, then the second inquiry asks whether a reasonable public

13  official could have believed his or her conduct to be lawful in light of the clearly established law

14  and information possessed by that official at the time of the conduct.  *Harlow v. Fitzgerald*, 457

15  U.S. 800, 818-819 (1982).  Qualified immunity is intended to give "government officials breathing

16  room to make reasonable but mistaken judgments," and "protects 'all but the plainly incompetent or

17  those who knowingly violate the law.'" *Ashcroft v. al-Kidd*, 563 U.S. at 743, *quoting Malley v.*

18  *Briggs*, 475 U.S. 335, 341 (1986).

19          In this case, no clearly established law would have put the LGMS PD officers on notice that

20  their actions on August 20, 2022 would violate Plaintiff's constitutional rights. The undisputed

21  evidence establishes probable cause to believe Plaintiff Reimann was intoxicated and could not care

22  for herself, a violation of California Penal Code section 647(f). She had left her car unattended in the

23  middle of the road for close to two hours, walked to a local restaurant, then wandered onto the

24  property of Glenn and Joan Cross, where she was rambling, confused and obnoxious, showing the

25  signs of intoxication, and refused to leave their property despite repeated requests. LGMS PD

26  Officers Reyes and Cpl. Carrizosa were dispatched to report of a white female possibly under the

27  influence of alcohol or drugs, saying that her car was blocking or broken down. When Reyes and

28  Carrizosa spoke with the Plaintiff, she smelled of alcoholic beverage. She refused to leave the front

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ                    23
Case No. 5:23-cv-04134-NC

1  porch of the residence when asked to do so and claimed that she was a neighbor and lived down the

2  street, despite her inconsistent statement that she lived in San Jose. Plaintiff Reimann's eyes

3  appeared red, her speech was slow and slurred, her body movements were slow and hand gestures

4  exaggerated. Her hair was disheveled. Her speech was rambling and she made comments that

5  seemed inappropriate in the context of our conversation. Officer Reyes and Cpl. Carrizosa concluded

6  that Reimann showed signs of alcohol intoxication and was unable to care for herself. Since she

7  reported that there was no one to come pick her up and safely get her home, they decided to take her

8  to the sobering center, although she refused to take a COVID test and was then taken to the county

9  jail to sober up. (Reyes Decl., ¶¶ 3 - 28) (Carrizosa Decl., ¶¶ 3 - 26) (Lira Decl. Exhs. A - S) (Hewitt

10  Decl., Exh. 4: pp. 8:8 – 11:17; 16:18 – 17:8; 21:17 – 22:6; 28:8 – 31:4 & Hewitt Decl. Exh. 5.)

11  Under these circumstances, at minimum, qualified immunity would shield Officer Jonathan Reyes

12  (and the other LGMS PD officers) from liability for a Fourth Amendment unreasonable seizure

13  claim.

14  As to Plaintiff's Fourth Amendment excessive force claim, the video footage demonstrates

15  that the LGMS PD officers' physical contact with Plaintiff was not excessive and did not constitute a

16  "harmful or offensive contact" with her.  The videos show that the officers gently assisted her to

17  standing, escorted her, and assisted her in and out of the patrol vehicle and to the jail. And the videos

18  show that Plaintiff's handcuffs were not overtightened, nor did she complain or appear to be

19  experiencing discomfort or pain. (See Reyes Decl., ¶ 15) (Carrizosa Decl., ¶ 14) (Lira Decl. Exhs. H

20  - S) (Hewitt Decl., Exh. 2 (screenshots of video depicting handcuffs on plaintiff).) When Officer

21  Reyes offered to remove the handcuffs if Plaintiff would cooperate once they entered the jail, but

22  Reimann told him to "keep them on." (Lira Decl. Exh. P, starting at approx. 0:00:16.) (Reyes Decl.,

23  ¶ 21.) (Carrizosa Decl., ¶ 20.)  No clearly established law would put Officer Reyes on notice that his

24  actions were unconstitutional. See case law cited in Section IV.D *supra*: *Williamson v. City of*

25  *National City,* 23 F.4th at 1149; *Yaroshinsky v. City of Los Angeles*, 2021 WL 4312567, at *8; *Hupp*

26  *v. City of Walnut Creek*, 389 F.Supp.2d at 1232; *Stevenson v. Jones*, 254 F. Supp. 3d at 1092;; *Smith*

27  *v. County of Orange*, 678 F.Supp.3d at 1211–1212; *Echevarria v. City of Santa Monica*, 2022 WL

28  2903123, at *9.

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC

24

1  The existing law would not have put the officers, including Officer Reyes, on notice that

2  their actions on August 20, 2022 were unlawful, nor "placed the statutory or constitutional question

3  **beyond debate**." *White v. Pauly*, 137 S. Ct. at 551, *citing Mullenix v. Luna*, 136 S. Ct. at 308;

4  *Anderson v. Creighton*, 483 U. S. at 640. Defendant Jonathan Reyes is entitled to qualified

5  immunity.

6  ## V.  CONCLUSION

7  For the foregoing reasons, Defendants Town of Los Gatos and LGMS PD Officer Jonathan

8  Reyes are entitled to summary judgment and dismissal of this entire action; alternatively, Defendants

9  are entitled to partial summary judgment on each of the legal claims set forth in Plaintiff's Amended

10  Complaint (Doc. 39).

11  DATED: August 6, 2024                Respectfully submitted,

12                                        RIVERA HEWITT PAUL LLP

13                                        */s/ Shanan L. Hewitt*
14                                        SHANAN L. HEWITT
                                          Attorneys for Defendants,
15                                        TOWN OF LOS GATOS
                                          AND OFFICER REYES

RIVERA HEWITT PAUL LLP
11341 Gold Express Drive, Suite 160
Gold River, CA 95670
(916) 922-1200

DEFENDANTS' MSJ/PARTIAL MSJ
Case No. 5:23-cv-04134-NC                25